# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 01-20152

_____


FRED E BEISER,


Plaintiff - Appellant,


versus


IBOLYA WEYLER; ROY M HUFFINGTON; HUNGARIAN
HORIZON ENERGY LIMITED; HORIZON ENERGY LIMITED;
CHALMUS LIMITED; ROY M HUFFINGTON INC,


Defendants - Appellees.


Appeal from the United States District Court
For the Southern District of Texas


March 19, 2002

Before BALDOCK[*], SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

    In this appeal, we decide whether the plaintiff's lawsuit, alleging only state law causes of

action, "relates to" an international arbitration agreement with the defendants, such that the district

_____

    [*]Circuit Judge of the Tenth Circuit, sitting by designation.

court had removal jurisdiction under 9 U.S.C. § 205.[1]  That section permits defendants to remove a plaintiff's state-filed lawsuit to federal court when the subject matter of the suit "relates to" an arbitration agreement that "fall[s] under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter "the Convention").[2]

Fred Beiser, a consultant in the oil and gas industry, served as a director and the only employee of Horizon Energy Limited ("Horizon").  Horizon is a limited liability company organized under the laws of the State of Jersey, in the Channel Islands.  Horizon contracted to consult with Roy M. Huffington, Inc. on the acquisition of development rights to an oil and gas field in Hungary.  Horizon also entered into a line of credit agreement with Hungarian Horizon Energy Limited

[1]Section 205 reads, in relevant part:

Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding . . . . The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

[2]Congress ratified the Convention in 1970 to provide United States citizens predictable enforcement of arbitral contracts in foreign courts.  *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1207 (1991).  Signatories to the Convention agree that they will enforce written agreements to submit disputes to arbitration.  Convention, December 29, 1970, Art. II, para. 1, 21 U.S.T. 2517, 330 U.N.T.S. 38.  Signatories also agree that they will enforce the judgments of arbitrators.  *Id.* at Art. III.

Congress implemented the Convention at 9 U.S.C. §§ 201 - 208.  Section 202 defines which arbitration agreements "fall under the Convention." In order for an agreement to fall under the Convention, it must arise out of a commercial relationship.  At least one of the parties to the agreement must not be a U.S. citizen, or, if the agreement is entirely between U.S. citizens, it must have some "reasonable relation" with a foreign state.  9 U.S.C. § 202, *see also Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.,* 767 F.2d 1140, 1144 (5th Cir. 1985) (describing when arbitration agreements fall under the Convention).

9 U.S.C. § 208 provides that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16, applies to arbitration agreements under the Convention to the extent that the FAA does not conflict with either the Convention or its implementing legislation.

("Hungarian Horizon"). The line of credit agreement provided financing for the development of the oil interest. Both agreements contained clauses providing for the arbitration of any dispute in London. Beiser signed both agreements on behalf of Horizon.

Beiser now contends that the defendants (hereinafter collectively "Huffington") wrongfully deprived him of his financial interest in the Hungary field. The group of defendants includes several individuals and limited liability entities, including Roy Huffington, Horizon, Hungarian Horizon, and Roy M. Huffington, Inc., who together funded and developed the oil and gas field. Beiser avers that the defendants fraudulently induced him to assist with the Hungary project by falsely promising him a financial stake in the field's production. He filed suit in Texas court, alleging a number of state law tort claims. Huffington removed the case to the United States District Court for the Southern District of Texas, contending that Beiser's case "related to" the arbitration clauses in the two agreements. Huffington also moved to compel arbitration.

Beiser moved to remand to state court. He did not contest that the arbitration agreements "fall[] under the Convention" within the meaning of § 205. Instead, he insisted that he was not a party to those agreements. Beiser pointed out that corporate officers or directors sign contracts as agents of the corporation only. When an officer signs as a corporate fiduciary, he does not thereby bind himself personally to the agreement. *E.g., Newby v. Von Oppen,* 7 L.R.-Q.B. 293, 294 (1872) (Blackburn, J.) ("[I]ndividuals who constitute the . . . corporation cannot be made liable personally on its contracts . . . .").[3] Beiser argued that Horizon, the company, agreed to arbitrate its disputes

---

[3]The consulting agreement entered into by Horizon includes a choice-of-law clause providing that English law applies. English law appears to recognize the principle of limited liability that, absent special circumstances, officers, directors, and shareholders are not personally liable on the corporations' contracts. *Newby*, 7 L.R.-Q.B. at 294.

with Huffington. Beiser, the individual, made no such agreement.[4]

The district court denied Beiser's motion to remand without opinion. Beiser did not file a response to Huffington's motion to compel arbitration. The district court granted that motion, and Beiser now appeals. On appeal, as in the district court, Beiser insists that he challenges only the subject matter jurisdiction of the federal courts under § 205, not the merits of the motion to compel arbitration.[5]

## I

Although Beiser clearly articulates his position that he signed the agreements only as an agent of Horizon, he does not explain precisely why this fact means that the agreements do not "relate to" the subject matter of his suit. We suppose that he means to say that, if he is not bound personally to the agreements, that the agreements are simply unconnected to his claims. That is, corporations (and

---

[4]In its recent decision in *Equal Employment Opportunity Commission v. Waffle House,* 122 S. Ct. 754 (2002) (hereinafter "*EEOC*"), the Supreme Court emphasized that non-parties to an arbitration agreement may not be compelled to arbitrate. In *EEOC*, the Court considered whether an employee's agreement to arbitrate disputes with his employer prevented the EEOC from suing the employer on the employee's behalf to obtain victim-specific relief, like backpay or reinstatement. The Court concluded that the EEOC was not prevented from filing suit or seeking any remedy that would otherwise be available. It emphasized that the EEOC was not a party to the employee's arbitration agreements. The Federal Arbitration Act, explained the Court, requires nothing more than treating arbitration agreements like any other contract, and "it goes without saying that a contract cannot bind a nonparty." *Id.* at *8. Nothing in the FAA, the Court reasoned, "authorizes a court to compel arbitration . . . by any parties . . . that are not already covered in the agreement." *Id.* at *6.

[5]We do not know why Beiser chooses to challenge only our jurisdiction under § 205 when his arguments just as easily could apply to the merits of the motion to compel arbitration. Nevertheless, he clearly disputes only jurisdiction. In the district court, Beiser filed a motion to remand, but no response to the motion to compel arbitration. Under Southern District of Texas local rules, the failure to file a response to a motion represents that a party has no opposition. S.D. TEX. R. 7.4. In oral argument before this panel, Beiser's attorney confirmed that he contests only the court's § 205 jurisdiction. We therefore consider only whether the district court had removal jurisdiction, and not whether it properly compelled arbitration on the merits.

-4-

limited liability companies) are separate legal persons: the agreements here relate to Horizon's transactions with Hungarian Horizon and Roy M. Huffington, Inc., not Beiser's personal relationship with those entities and the people that control them. According to Beiser, he is legally distinct from Horizon: agreements to arbitrate entered into by Horizon have simply nothing to do with him.

Beiser's position finds some support in our vacated and therefore no longer binding decision in *Marathon Oil Co. v. Ruhrgas*, 115 F.3d 315, 320 (5th Cir. 1997), *reh'g en banc granted and opinion vacated,* 129 F.3d 746 (5th Cir. 1997), *aff'd on other grounds*, 145 F.3d 211 (5th Cir. 1998), *rev'd on other grounds*, 526 U.S. 574 (1999). In that case, Marathon Petroleum Norway (MPN) entered into an agreement with the German gas company Ruhrgas that provided for the binding arbitration of disputes related to a North Sea gas field. Marathon Oil Company, an affiliate of MPN, sued Ruhrgas, claiming that Ruhrgas falsely promised MPN premium prices for the gas from the field, thereby fraudulently inducing Marathon to invest $300 million in MPN. Ruhrgas removed the case on the basis of § 205.

The panel held that § 205 did not provide a basis for jurisdiction. In large part, the panel relied on the fact that Marathon Oil had not signed the agreements. According to the panel, "the issue is whether any *relevant* arbitration agreement exists between the parties to this litigation . . . . Simply stated, there is no such agreement." *Id.* at 321. Although signatory MPN was bound to the agreements, and compelled to arbitrate, its non-signatory affiliate company was free to bring suit in state court.

The en banc court reached the same conclusion as the panel on another issue in the case, but did not affirm the panel with respect to § 205. It remanded to the district court for re-examination of whether that section conferred subject matter jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 145

F.3d 211, 225 (5th Cir. 1998), *rev'd, Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574 (1999). The dissent went further. It commented on behalf of eight judges that the defendant's invocation of § 205 was "certainly not frivolous" and noted the "mountain of amicus briefs criticizing the panel's interpretation of § 205." *Id.* at 233 (Higginbotham, J. dissenting).

We reject Beiser's and *Marathon Oil*'s interpretation of "relates to" in § 205. We interpret statutes according to their plain meaning, and the plain meaning of the phrase "relates to" sweeps broadly enough to encompass the relationship between the arbitration clauses in the agreements and Beiser's suit. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (holding that statutes should be interpreted according to their plain meaning). The Supreme Court has described the "normal sense" of the phrase "relates to" as having a "connection with" or "reference to." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). The phrase "relates to" generally conveys a sense of breadth. *See id.* at 96 - 97 (giving broad scope to ERISA's preemption of any state law that "relates to" an employee benefit plan). Here, the two agreements are the only written contracts governing Beiser's work in Hungary. Beiser was Horizon's only employee; the contracts were entered into specifically to secure his personal expertise and advice in developing the oil interest. Developing Beiser's case will necessarily involve explaining the scope and operation of the two contracts. Even if Beiser is right on the merits that he cannot ultimately be forced into arbitration, his suit at least has a "connection with" the contracts governing the transaction out of which his claims arise.

The definition that we have given the phrase "relates to" in another area of law where that phrase defines our jurisdiction helps to specify more fully the phrase's plain meaning. In bankruptcy, district courts have jurisdiction over any state proceeding that "relates to" a bankruptcy case. 28

U.S.C. § 1334. We read the phrase "relates to" in § 1334 expansively, permitting jurisdiction whenever the outcome of a proceeding could "*conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). This definition of "relates to" as "conceivably having an effect on the outcome of" seems to capture at least one sense in which we commonly use the phrase. For example, we might say that the "creditors suit to recover on its security interest relates to the debtor's attempt to reorganize" or that "the witness's testimony that the pedestrian was drunk relates to the issue of contributory negligence." Whatever else the phrase "relates to" conveys, it means at least as much as having a possible effect on the outcome of an issue or decision.

Similarly, whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" to the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

So, in this case, Huffington contends that the agreements require Beiser to submit his claims to an arbitrator. Huffington's contention is not frivolous. The doctrine of corporate personhood is not an absolute shield to liability for officers, directors, employees and shareholders. That doctrine contains exceptions and limitations, and cannot be applied automatically any time a litigant seeks to hold an individual liable for something the individual did in the corporation's name. Although Beiser did not formally commit to any of the agreements, it is at least conceivable that a court might pierce the corporate veil and hold him personally responsible for the contracts designed to secure his

personal involvement on the Hungary development. The fiction of corporate personhood is a convenient way to capture the essence of the principle of limited liability; but the fact that we often call a corporation a separate legal person does not mean that Beiser is simply a stranger to the two agreements. Because the arbitration agreements could conceivably affect the disposition of Beiser's claims, those agreements "relate to" his claims, and the district court had removal jurisdiction under § 205.

## II

Besides conflicting with the plainly broad meaning of "relates to," Beiser's suggested approach to determining a court's jurisdiction under § 205 has the disadvantage of frontloading a merits inquiry into the district court's examination of its jurisdiction. If we were to accept Beiser's view that the agreements "relate to" his claims only if he turns out on the merits to be personally bound to the agreements, the district court would have had to make a final conclusion about whether to pierce Horizon's corporate veil as part of its jurisdictional determination. It would have to decide if Horizon was the alter ego of Beiser and if corporate formalities were observed. It would have to take evidence. It would have to examine any other legal theory by which Beiser could be held bound to the arbitration clauses. Beiser would therefore have the court performing merits-like inquiries during the jurisdictional stage of the proceedings.

For most forms of federal question jurisdiction, whether the court has jurisdiction can be determined from the face of the pleadings. Section 205 confers a form of federal question jurisdiction: it permits the federal courts to decide cases that arise "under . . . Treaties made" by the United States. U.S. CONST. ART. III, § 2. But, on Beiser's view of the federal question jurisdiction conferred by § 205, a court could not tell by the pleadings alone whether the case arose under federal

law. It would have to engage in a significantly more detailed inquiry. And once the district court made its determination of jurisdiction, there would be nothing left to do on the merits. If it decided that Beiser was indeed personally bound to the contracts, it would by that fact have decided not only that it had jurisdiction under § 205 but also that it should compel Beiser to arbitrate. Beiser's view therefore conflates the jurisdictional and merits inquiries into a single step.

Conceptually, whether a federal court has jurisdiction to decide an issue is a distinct question from how to decide that issue correctly. To use Justice Holmes's phrase, "Jurisdiction is the power to decide the case either way." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).[6] When a plaintiff brings a civil rights suit under 42 U.S.C. § 1983, or a discrimination action under Title VII, or a habeas petition under 28 U.S.C. § 2255, the district court has jurisdiction to decide the case, even if the claims ultimately prove unavailing. Whether the district court has jurisdiction can be determined from the "face of the plaintiff's well-pleaded complaint") ) from the pleading itself, without the requirement of evidence or a merits inquiry. *See Louisville & N.R. Co. v. Mottley*, 211 U.S. 149 (1908) (establishing the well-pleaded complaint rule by which jurisdiction under the general federal question jurisdiction statute, 28 U.S.C. § 1331, is determined by reference to the plaintiff's complaint alone). Beiser's view would require the unusual step of going beyond the pleadings to

_____

[6]Justice Jackson likewise warned against confusing the lack of merit in a federal claim with a lack of jurisdiction:

> As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action. . . . To determine whether [the federal] claim is well founded, the District Court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has.

*Montana-Dakota Util. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951).

determine whether the district court had federal question jurisdiction. It would combine the jurisdictional and merits inquiry into a single stage.

The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone. Section 205 provides in part: "The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint *but may be shown in the petition for removal*." 9 U.S.C. § 205 (emphasis added). This language does create one difference between the federal question jurisdiction conferred by § 205 and most other forms of federal question jurisdiction: it permits removal on the basis of a federal defense. The language that the ground for removal "need not appear on the face of the complaint" explicitly abrogates the well-pleaded complaint rule that normally keeps such defenses from serving as the basis for federal question jurisdiction. But at the same time the statute permits a defense based on an arbitration clause to serve as a grounds for removal, it also directs us to treat such defenses the same way that we treat offensive claims. That is, just as we determine whether a plaintiff's claim arises under federal law from the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the "petition for removal" alone.

The definition of "relates to" we have adopted allows the district court to determine its jurisdiction from the "petition for removal" itself, and keeps the jurisdictional and merits inquiries separate.[7] Earlier in this opinion, we explained that an arbitration clause under the Convention

_____

[7]Under the plain language of the statute, however, the plaintiff's case must relate to an agreement "falling under the Convention" in order for the district court to have jurisdiction. The district court may not be able to resolve from the petition itself whether the arbitration clause actually falls under the Convention. For example, 9 U.S.C. § 202 provides that the Convention applies only to arbitration agreements arising out of commercial relationships. The Court may have to consider

"relates to" the plaintiff's suit in the plain meaning of the phrase "relates to" whenever the clause could conceivably have an affect on the outcome of the case. As a result, absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim. This approach honors the statute's command that we treat defenses based on arbitration clauses under the Convention in the same way that we treat removal generally. It allows the district court to determine its jurisdiction from the petition for removal, without taking evidence[8] and without a merits-like inquiry.

## III

The problems with conflating jurisdiction and the merits into a single step go beyond conceptual infelicity: conflating jurisdiction and the merits also could have consequences that are both irrational and inconsistent with our precedents. Most importantly, conflating jurisdiction and the merits would deprive defendants of an opportunity to appeal in a significant class of cases in which the district court concludes that the arbitration clause under the Convention does not in fact provide a defense.

A district court's decision to remand for lack of subject matter jurisdiction cannot be reviewed by an appellate court. 28 U.S.C. § 1447(d). Suppose Beiser were right, and that, if he is not bound in his personal capacity to the agreements, the district court would lack jurisdiction. If that were the

---

evidence to resolve whether the party's relationship was commercial. But, as we observed in *Sedco, Inc. v. Petroleus Mexicanos Mexican National Oil Co.,* 767 F.2d 1140, 1144 (5th Cir. 1985), the "Convention contemplates a very limited inquiry by the courts." Resolving the question of whether the agreement falls under the Convention will ordinary prove quick and easy, without requiring too much merits-like investigation by the district court.

[8]*But see supra* note 7.

case, a district court decision favorable to Beiser would not be subject to appeal. Such a decision would be a determination that the district court lacked subject matter jurisdiction under § 205. Because decisions to remand for lack of subject matter jurisdiction are not appealable, the district court's conclusion not to enforce an arbitration clause under the Convention would be a final, irrevocable federal pronouncement.

We have twice commented on the importance of a defendant's right to appeal the refusal to enforce an arbitration clause under the Convention. *Sedco, Inc. v. Petroleus Mexicanos Mexican National Oil Co.,* 767 F.2d 1140, 1149 (5th Cir. 1985); *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1211 - 12 (5th Cir. 1991). In *Sedco*, we held that the Convention abrogated a rule of admiralty law that otherwise would have barred appeal of the district court's refusal to enforce an arbitration clause. We noted in particular that the Convention contains a reciprocity clause. *Sedco*, 767 F.2d at 1149; *see also* Convention, Art. XIV, 21 U.S.T. 2517. By the terms of that clause, other countries must respect the rights of U.S. citizens under the Convention only to the extent that the United States implements the Convention within its own borders. Because the refusal to enforce an arbitration clause under the Convention risks jeopardizing the United States's treaty obligations with 65 nations, the *Sedco* court held that appellate review of such refusals must be available notwithstanding a maritime law rule to the contrary.

In *McDermott*, we considered whether a clause in an arbitration agreement waived a defendant's right to remove to federal court under § 205. We established a clear statement rule for waivers of a litigant's rights under § 205. A party may only waive his right to remove under the statute by clearly and explicitly saying so in the agreement. *Id.* at 1209. One important reason for the clear statement rule was our conclusion that Congress favored federal jurisdiction over

Convention-related claims in order to promote the development of a uniform body of law under the Convention. We quoted language from the Supreme Court that the "goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was . . . to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *McDermott*, 944 F.2d at 1212. Reducing local variations in how courts interpret and enforce arbitration clauses makes it easier for businesses engaged in international transactions to use and rely on such clauses. In *McDermott*, we commented that broad federal jurisdiction over Convention questions fosters uniformity by reducing the number of final decisionmakers on a given question. *McDermott*, 944 F.2d at 1211 - 12. We reasoned that a litigant in a federal district court may appeal as of right to one of eleven United States Courts of Appeals, each having jurisdiction over a multi-state area. *Id.* at 1212. By contrast, absent a rare appeal to the United States Supreme Court, any of 50 state supreme courts could have the final word on a Convention question litigated in state court. *Id.* The right to appeal therefore was an important ingredient in why federal jurisdiction was favored: the right to appeal to a Court of Appeals fostered uniformity over at least a multi-state area.

Moreover, denying defendants appellate review over the refusal to enforce an arbitration clause under the Convention would be in tension with the solicitude with which federal law generally treats arbitration. Arbitration is favored in the law. *E.g.*, *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 526 (5th Cir. 2000), *cert. denied*, 531 U.S. 1013 (2000). In interpreting the Federal Arbitration Act (FAA), which is expressly made applicable to arbitration clauses under the Convention, the Supreme Court requires that we resolve all questions with a "healthy regard" for the federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S.

1, 24 - 25 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."); *Six Flags Over Texas, Inc. v. International Broth. of Elec. Workers, Local No. 116*, 143 F.3d 213, 215 (5th Cir. 1998); *see also* 9 U.S.C. § 208 (providing that the FAA applies to arbitration clauses under the Convention except to the extent that the FAA conflicts with the Convention or its implementing legislation). Insulating some significant category of refusals to enforce arbitration clauses from appellate review would clash with the policy favoring arbitration; it would treat such claims worse rather than better than most legal issues.

Insulating a class of refusals of Convention-related defenses from appellate review would also have irrational consequences in the area of issue preclusion. Principles of res judicata apply to a court's jurisdictional determinations, both personal and subject-matter. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). As such, the precise issue necessary to a jurisdictional determination generally may not be re-litigated, even though the underlying substantive claim may be brought again. But among the requirements for issue preclusion is that the party have a "full and fair" opportunity to litigate. *E.g.*, *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389 (5th Cir. 2001). If a litigant, as a matter of law, has no right to appellate review, then he has not had a full and fair opportunity to litigate and the issue is not precluded. RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1980). Here, § 1447(d) provides, as a matter of law, that litigants may not appeal the district court's determination that it lacks subject matter jurisdiction. Beiser's view of the case would therefore often permit defendants to re-litigate after remand to the state court whether an arbitration clause provides a defense. For example, if the district court had sided with Beiser and remanded the case for lack of jurisdiction, the district court's conclusion that the arbitration clauses did not bind Beiser personally would not be appealable. If the

-14-

conclusion were not appealable, res judicata would not prohibit the state court from reexamining the issue. The state court might therefore reach a different conclusion about a dispute's arbitrability than the federal court. In light of the precedents establishing arbitration as a special area of federal concern, we cannot conclude that Congress intended state courts to duplicate factual and legal inquiries already conducted by federal judges. *See Moses H. Cone*, 460 U.S. at 24 - 25 (commenting that the Federal Arbitration Act establishes arbitration as a special area of federal concern). Our precedents and those of the Supreme Court require us to hold that a decision about whether the clauses bind Beiser personally is a decision on the merits, entitled to issue preclusion and subject to appellate review.

## IV

The low bar that we have set for jurisdiction under § 205 may seem to be in tension with the rule that we strictly construe statutes conferring removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). In allowing removal whenever the arbitration clause could conceivably impact the disposition of the case, we make it easy, not hard, for defendants to remove.

But we conclude that easy removal is exactly what Congress intended in § 205. *McDermott*, 944 F.2d at 1209 ("Congress made it easy for defendants in state-filed Convention cases to remove to federal court."). Federalism concerns animate the rule requiring strict construction of removal statutes. Removal involuntarily wrests away cases within a state court's jurisdiction and deposits them in federal court. We nevertheless recognize Congress's power, within constitutional limitations, to permit removal when it so desires. Moreover, federal courts are courts of limited jurisdiction. We thus make especially certain that we take jurisdiction only over such cases as Congress has provided

by statute. The strict construction rule recognizes Congress's ultimate authority to shape the jurisdiction of the lower federal courts.

The use of the broad phrase "relates to" indicates that Congress's intent in § 205 was to confer jurisdiction liberally. When the phrase "relates to" is used, even in areas which implicate significant federalism concerns, courts have consistently held that the phrase carries a broad connotation. For example, we have already observed the sweeping scope given to the phrase "relates to" in the statute defining our bankruptcy jurisdiction. Broad bankruptcy jurisdiction interferes with state proceedings much more significantly than does § 205. And in the ERISA context, the phrase "relates to" defines the scope of preemption. 29 U.S.C. § 1144(a). ERISA preempts any state law that "relates to" an employee benefit plan. *Id.* In *Shaw v. Delta Airlines,* 463 U.S. at 97, the Supreme Court gave an explicitly broad interpretation to the phrase "relates to" in ERISA, despite the fact that preemption arguably implicates federalism concerns at least as strongly as removal.

Moreover, § 205 does not interfere with state courts as much as ordinary removal under the general removal statute, 28 U.S.C. § 1441. When a case is removed under § 1441, it will often remain in federal court until its conclusion. Under § 205, however, the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits. The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court. *See* 28 U.S.C. § 1441(c) (granting district court discretion to remand all claims in which state law predominates); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (noting that when all federal claims are resolved early in a lawsuit and only state law claims remain,

-16-

the district court almost always should remand to the state court); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989) (same). Except for state law claims that turn out to be subject to arbitration, § 205 will rarely permanently deprive a state court of the power to decide claims properly brought before it. The district court will ordinarily remand those cases that turn out not to be subject to arbitration, such that the state court will be able to resolve the merits of the dispute. Section 205 therefore raises fewer federalism problems than the general removal statute, § 1441: except in arbitrable cases, it will ordinary permit state courts to resolve the ultimate issues in a case.

In this case, Huffington's contention that the arbitration clauses under the Convention provide a defense was not fanciful. The clauses could conceivably impact the outcome of the case; they therefore "relate to" the subject matter of Beiser's suit. The district court thus had jurisdiction under § 205. The correct procedure for Beiser to have followed would have been to respond on the merits to Huffington's motion to compel arbitration. If successful, Beiser then could have moved to remand to the state court.

We express no opinion on the merits of Huffington's motion. We hold only that the subject matter of Beiser's lawsuit "relate[d] to" an arbitration agreement falling under the Convention, and that the district court therefore had jurisdiction to render its decision.

AFFIRMED.