United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 8, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30126

_____

KEN ACOSTA; ET AL.,

                                                  Plaintiffs,

HENRY CHIRO, SR.; JACQUELINE B. CHIRO; ZACHARY SMITH, III,

                                        Plaintiffs - Appellants,

                            versus

MASTER MAINTENANCE AND CONSTRUCTION INC.; ET AL.,

                                                  Defendants,

MASTER MAINTENANCE AND CONSTRUCTION INC.;
GEORGIA GULF CORP.; PAYNE & KELLER COMPANY INC.;
LEXINGTON INSURANCE CO.; LOUISIANA INTRASTATE GAS CO.;
LA INTRASTATE GAS CORP.; HYDROCHEM INDUSTRIAL SERVICES INC.;
LIG LIQUIDS CO.; EQUITABLE RESOURCES INC;
ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD.,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

        The United States is a party to the Convention on the
Recognition and Enforcement of Foreign Arbitral Awards
("Convention"), which Congress has implemented at 9 U.S.C. § 201,
et seq. ("Convention Act").  Among the Convention Act's provisions
are jurisdictional grants giving the federal district courts
original and removal jurisdiction over cases related to arbitration

agreements falling under the Convention. This appeal asks whether Appellants' action is related to an arbitration agreement falling under the Convention and therefore removable to federal court, and if so, whether the unanimity rule applicable to removals under 28 U.S.C. § 1441(a) also applies to Convention Act removals. We need not decide this last question because even if the unanimity rule applies, it is satisfied here.

I

A

Appellants constitute a three-person subset of over 2,000 plaintiffs who brought state-law tort actions in Louisiana state court alleging injuries stemming from the September 1996 release of a mustard-gas agent at the Georgia Gulf Corporation ("GGC") facility in Plaquemine, Louisiana. Louisiana state law allows direct actions against a tortfeasor's insurers, so the plaintiffs named as defendants, in addition to GGC and several of its contractors, two foreign insurers, Primex, Ltd. ("Primex") and X.L. Insurance Company, Ltd. ("X.L."), whose insurance policies included arbitration clauses governing disputes over coverage.

In October 1998, the plaintiffs amended their complaints to assert intentional tort claims against GGC. Shortly thereafter, Primex and X.L. notified GGC in writing that they were disputing insurance coverage as a result of these new allegations. In December 1998, Primex and X.L. notified GGC that they had commenced arbitration pursuant to their policies' arbitration clauses. Five

2

days later, and one day after a subset of defendants ("the LIG defendants")[1] were severed from the case by joint motion of the parties, Primex and X.L. removed this and scores of related cases to federal court, arguing that the allegations of an intentional tort created a coverage dispute between them and GGC, thus invoking the arbitration clauses of their insurance policies and bringing the action within the purview of the Convention Act and its provisions for removal. The plaintiffs filed a motion for remand to state court shortly thereafter, which the District Court denied in March 1999.

Primex filed a motion to compel arbitration and stay the plaintiffs' actions, and the plaintiffs filed a motion requesting certification of the remand denial for immediate appeal under 28 U.S.C. § 1292(b). While these motions were pending, a settlement agreement was negotiated, but Appellants elected not to participate and pursued the litigation, which was eventually dismissed with prejudice on summary judgment in December 2004. Appellants appeal only to contest the District Court's jurisdiction. If jurisdiction exists for the District Court to have entertained this action, it is to be found in the Convention Act.

B

---

[1]The "LIG defendants" are Louisiana Intrastate Gas Company, L.L.C.; LIG Chemical Company; Equitable Resources, Inc.; and Associated Electric Gas Insurance Services, Ltd.

3

The provision of the Convention Act providing for removal is 9 U.S.C. § 205:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

The parties agree that the insurance policies' arbitration clauses "fall[] under the Convention" as defined in § 202.[2] We must

---

[2] 9 U.S.C. § 202:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

4

therefore decide whether this action "relates to" the arbitration clauses within the meaning of § 205 and whether the failure of the LIG defendants to consent to removal defeats jurisdiction for lack of unanimous consent among defendants.

II

A

Section 205 does not explicitly define when an action "relates to" an arbitration agreement falling under the Convention. However, the federal courts have recognized that the plain and expansive language of the removal statute embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention.

Congress's purpose and intent, in enacting the Convention Act, was "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Sherck v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974). The unambiguous policy in favor of recognition of arbitration agreements falling under the Convention is reflected in provisions incorporating by reference the Federal Arbitration Act, 9 U.S.C. § 208,[3] and independently and explicitly empowering courts to compel

---

[3] 9 U.S.C. § 208:

5

arbitration in accordance with the arbitration agreements involved. 9 U.S.C. § 206.[4]

Because "uniformity is best served by trying all [Convention] cases in federal court unless the parties unequivocally choose otherwise," McDermott Int'l, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1207-08 (5th Cir. 1991), Congress granted the federal courts jurisdiction over Convention cases[5] and added one of the broadest removal provisions, § 205, in the statute books. So generous is the removal provision that we have emphasized that the general rule of construing removal statutes strictly against

---

Chapter 1 [9 U.S.C. § 1 et seq.] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.

[4] 9 U.S.C. § 206:

A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

[5] 9 U.S.C. § 203:

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

removal "cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court." Id. at 1213.

With these considerations in mind, we turn to the statutory text and the meaning of the statutory phrase "relates to"; that is, we must decide whether the subject matter of the underlying lawsuit "relates to" the arbitration agreement in the insurance policy between the alleged tortfeasor and the defendant insurers. In Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002), we examined the plain meaning of the phrase, relevant Supreme Court dicta regarding the phrase, and Congressional use of the phrase in other statutes, e.g., 28 U.S.C. § 1334 (giving federal district courts jurisdiction over any state proceeding that "relates to" a bankruptcy case). We noted that the phrase "relates to" "conveys a sense of breadth" and "sweeps broadly . . . ." 284 F.3d at 669. We interpreted the phrase in a way that was sufficient to dispose of that case on its facts, namely, "whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit," 284 F.3d at 669 (emphasis in original), but we emphasized that the adopted rule for that case was not exhaustive of the cases in which jurisdiction would be appropriate.[6]

---

[6] "This definition of 'relates to' as 'conceivably having an effect on the outcome of' seems to capture at least one sense in which we commonly use the phrase . . . . Whatever else the phrase 'relates to' conveys, it means at least as much as having a

7

Appellants now assert that the definition given to the phrase "relates to" in Beiser means that jurisdiction is lacking here because Louisiana's direct-action statute cancels the binding effect of the arbitration clauses; thus, whatever is decided in the arbitration proceedings will not affect the outcome of the litigation.[7]  Even if this asserted effect of the Beiser rule on

_____

possible effect on the outcome of an issue or decision."  284 F.3d at 669 (emphases added).

[7]If not for the direct-action statute, this case would fit easily under the Beiser rule:  Appellants' claims against the foreign insurers hinge on policy coverage, which is to be determined, according to the policy, by arbitration.  Hence, arbitration would appear likely, if not certain, to affect the ultimate outcome of Appellants' lawsuit, since "an arbitration award can be enforced in a subsequent proceeding against parties that did not participate in an arbitration in circumstances when the parties to the arbitration had related and congruent interests which were properly advanced during the arbitration."  Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 166 (5th Cir. 1998).

However, a plausible argument for Appellants, which relies on dictum in In re Talbott Bigfoot, Inc., 887 F.2d 611, 614 (5th Cir. 1989) (court not required by Federal Arbitration Act to stay direct action pending arbitration of coverage dispute), and Zimmerman v. Int'l Cos. & Consulting, Inc., 107 F.3d 344 (5th Cir. 1997) (same), contends that binding a direct-action plaintiff to the results of an arbitration proceeding to which it has not consented would contradict the direct-action statute by taking the insurance coverage question away from the state courts as guaranteed by the state statute, and such a result is not required by federal policy.  Thus, the district court in Mangin v. Murphy Oil USA, 2005 U.S. Dist. LEXIS 8338 (E.D. La. Apr. 29, 2005), held that arbitration could not conceivably affect the outcome of the lawsuit because collateral estoppel would not apply to the results of arbitration in which the direct-action plaintiffs did not participate.

Appellants failed to make this collateral-estoppel argument in their opening brief, and cite Mangin in their reply brief only for its favorable conclusion, otherwise mischaracterizing Mangin's analysis as "effectively illustrat[ing] the straightforward logic

8

the arbitration clauses is correct, it does not dispose of the jurisdictional question, for as we have indicated, <u>Beiser</u> did not purport to establish a comprehensive rule disposing of all cases. Thus we return to the statutory text to determine whether the Convention Act's grant of jurisdiction extends to this case.

---

underpinning Appellants' position in the instant case." Notwithstanding this gloss, as the issue before us is jurisdictional, we note our skepticism of the analysis adopted by the <u>Mangin</u> court.

First, the assertion that arbitration can have no preclusive effect is difficult to square with <u>Bigfoot</u>'s statement that a discretionary stay pending arbitration might still be available, 887 F.2d at 614 (5th Cir. 1989); <u>see also</u> <u>Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.</u>, 460 U.S. 1, 20 n. 23 (1983); <u>In re Complaint of Hornbeck Offshore Corp.</u>, 981 F.2d 752, 755 (5th Cir. 1993). Thus, in <u>Lannes v. Operators Int'l</u>, 2004 U.S. Dist. LEXIS 25781 (E.D. La. 2004), the district court held that the availability of a discretionary stay left open the possibility that arbitration could affect the outcome. Second, whether collateral estoppel is the legal equivalent of "could not conceivably affect" is unclear. Irrespective of a stay, a court might find the results of arbitration between insurers and insured (whether voluntary or compelled by the court pursuant to § 206) to be persuasive, if not binding, and thus rely thereon in determining policy coverage. Third, to the extent <u>Mangin</u>'s analysis relies on <u>Bigfoot</u>'s assumption that an arbitration clause is no different from a no-action clause, we think that assumption unnecessary to the holding and therefore dictum. Fourth, we note that the federal policy favoring arbitration, which was held not to conflict with the direct-action statute, may not be identical in the FAA and Convention Act contexts. At the least, we note that the FAA contains no independent grant of federal jurisdiction, <u>see</u> <u>Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.</u>, 138 F.3d 160, 163 (5th Cir. 1998); the Convention Act does.

As this last point suggests, the holdings of <u>Bigfoot</u> and <u>Zimmerman</u> are inapposite to the jurisdictional question posed here. In fact, the very assertion that arbitration clauses undisputedly falling under the Convention Act must be ignored emphasizes our responsibility to reasonably ensure the availability of a federal forum in which the uniform observance of such arbitration agreements can be most consistently effected.

9

"Relate" means "to have connection, relation, or reference," AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2000); see also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983). It is unarguable that the subject matter of the litigation has some connection, has some relation, has some reference to the arbitration clauses here. Appellants' assertion of claims against the insurers is, in part, an assertion of policy coverage of the insured's alleged torts. Common sense dictates the conclusion that policy provisions relating to coverage of the insured's torts are, almost by definition, related to claims that are based on the disputed assertion of coverage of the insured's torts. The arbitration clauses here declare the forum for the resolution of coverage disputes; they are therefore related to Appellants' disputed assertion of coverage and, hence, to the subject matter of Appellants' claims against the defendant insurers that depend on the existence of coverage. Stated as a rule, a clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes.

The jurisdictional question need not be confused by the presence of the direct-action statute. The operation of the direct-action statute as a matter of Louisiana state law does not alter the fact that the litigation is related to the arbitration clause as a matter of logic and federal removal law. Both state and federal courts can give proper effect to the direct-action statute; but we cannot ignore Congress's decision that the federal

10

courts are best able to establish uniformity in the enforcement of arbitral agreements. We therefore apply the jurisdictional provision, § 205, according to the plain meaning of its broadly drafted terms.

In sum, we conclude that the District Court correctly determined that the instant case "relates to" an arbitration agreement falling under the Convention.

B

We now come to the parties' dispute over whether § 205 removals require the unanimous consent of (non-nominal) defendants. The District Court held that § 205 does not require unanimity, but ruled in the alternative that unanimity was satisfied. Because we affirm the second conclusion, we need not consider the first.

The District Court ruled that unanimity was achieved because the allegedly non-consenting defendants, the LIG defendants, were nominal parties whose consent was not required under the unanimity rule. See, e.g., Tri-Cities Newspapers, Inc. v. Tri-Cities P.P. & A. Local 349, 427 F.2d 325, 327 (5th Cir. 1970). The District Court so held because, prior to removal, Appellants had signed a letter evincing an agreement in principle to settle their claims against the LIG defendants, and the state court had granted the parties' joint motion to sever the LIG defendants from the ongoing litigation. Appellants stated that they would "terminate the involvement of LIG group in all matters arising out of the chemical exposures that are the subject of this consolidated action."

11

We agree with the District Court that Appellants' attempt to retain the LIG defendants in the litigation for the sole purpose of defeating removal jurisdiction fails. Whether a party is "nominal" for removal purposes depends on "whether, in the absence of the [defendant], the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff." Tri-Cities Newspapers, Inc., 427 F.2d at 327. We are satisfied that the severance of the LIG defendants, voluntarily requested by Appellants based on their agreement to settle and dismiss all claims against those defendants, would enable the court to reach a final judgment "consistent with equity and good conscience" and fair to Appellants. Thus, even assuming unanimity is required, it is satisfied.

### III

For the foregoing reasons, we affirm the conclusion of the District Court that the subject matter of the instant action relates to arbitration agreements falling under the Convention and that federal jurisdiction was not defeated by a lack of unanimous consent of defendants because the allegedly non-consenting defendants were nominal parties whose consent was not required. Therefore, the judgment of the District Court that removal was proper under the Convention Act, 9 U.S.C. § 205, is

AFFIRMED.

12