# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20690

United States Court of Appeals
Fifth Circuit

**FILED**
August 9, 2017

Lyle W. Cayce
Clerk

BRITTANIA-U NIGERIA, LIMITED,

     Plaintiff - Appellant

v.

CHEVRON USA, INCORPORATED; ALI MOSHIRI; MONCEF ATTIA,

     Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Plaintiff Brittania-U Nigeria, Limited ("Brittania-U") sued Defendants Chevron U.S.A. Inc. ("Chevron"), Ali Moshiri, and Moncef Attia (collectively, "Defendants") for fraud, misrepresentation, and tortious interference with business relations arising out of a bidding process for oil leases in Nigeria. Brittania-U now appeals the district court's denial of its motion to remand and the grant of Defendants' motions to dismiss based on an arbitration provision in a confidentiality agreement between Brittania-U and Chevron. Finding no error, we AFFIRM.

No. 16-20690

I.

In 2013, Chevron Nigeria, Limited, a division of Chevron, opened a bidding process for the sale of its interests in three Oil Mining Leases ("leases") in Nigeria.[1]     BNP Paribas Securities Corp. ("BNP Paribas") served as Chevron's financial advisor and agent for the potential transaction.  Attia, then an employee of BNP Paribas, invited Brittania-U to participate in the bidding process.  Chevron employee Moshiri was also involved in the negotiations.

Early in the bidding process Brittania-U signed a confidentiality agreement, which Chevron also executed.  The confidentiality agreement contained an arbitration provision:

> If the dispute is not resolved pursuant to direct negotiations . . . then the dispute shall be finally resolved by binding arbitration and either Party may initiate such arbitration by giving notice to the other Party.  The arbitration shall be conducted in accordance with the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules, except to the extent of conflicts between the UNCITRAL Arbitration Rules.

The confidentiality agreement's arbitration provision also stated that "[t]he arbitrator(s) has the power to rule on objections concerning jurisdiction, including the existence or validity of this arbitration provision and existence or the validity of this Agreement."

Brittania-U did not win the leases, despite the fact that it bid higher than the winning party.  As a result, on May 18, 2016, Brittania-U filed suit against Chevron, Attia, and Moshiri in Texas state court alleging fraudulent

---

[1] Because this case is on appeal from the grant of a motion to dismiss, we accept Brittania-U's allegations as true.  *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

2

No. 16-20690

inducement in the bidding process against each defendant and tortious interference with prospective business relations against only Attia.

Chevron removed the case to federal court. Brittania-U filed a motion to remand, and each defendant filed a motion to dismiss. The district court denied Brittania-U's motion to remand and granted Defendants' motions to dismiss. Brittania-U now timely appeals.

## II.

We review a denial of a motion to remand de novo. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016). We also review de novo a motion to dismiss in favor of arbitration. *Gilbert v. Donahoe*, 751 F.3d 303, 306–07 (5th Cir. 2014).

## III.

## A.

Chevron asserted two bases for jurisdiction in its notice of removal: first, that diversity jurisdiction exists under the diversity statute, 28 U.S.C. § 1332, and second, that federal question jurisdiction exists under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 203. However, Brittania-U argues that Chevron improperly removed under both statutes so that the district court erred in denying Brittania-U's motion to remand.

We disagree with Brittania-U and find that jurisdiction exists under the Convention. The Convention Act provides United States courts with jurisdiction over "[a]n action or proceeding falling under the Convention . . . regardless of the amount in controversy." *Safety Nat'l Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 724 (5th Cir. 2009) (alterations in original) (citation omitted); *see also* 9 U.S.C. § 203 (stating that "[a]n action

3

No. 16-20690

or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."); 9 U.S.C. § 202 (explaining when an agreement falls under the Convention). The requirements for Convention jurisdiction are typically "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing 9 U.S.C. § 202) (citation omitted).

But the presence of a non-U.S. party is not required in all circumstances. *Freudensprung*, 379 F.3d at 340. "Convention [jurisdiction] may apply in such cases provided that there is a 'reasonable relation' between the parties' commercial relationship and some 'important foreign element.'" *Id.* (quoting *Jones v. Sea Tow Servs., Inc.,* 30 F.3d 360, 366 (2d Cir. 1994); *Lander Co. v. MMP Invs., Inc.,* 107 F.3d 476, 481 (7th Cir. 1997)). For an arbitration agreement that is "entirely between citizens of the United States" to fall under the Convention Act, it must "involve[] property located abroad, envisage[] performance or enforcement abroad, or ha[ve] some other reasonable relation with one or more foreign states." 9 U.S.C. § 202; *see also Freudensprung*, 379 F.3d at 339–41; *S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, 456 F. App'x 481, 484 (5th Cir. 2012).[2]

Here, Defendants are citizens of the United States, but the citizenship of Brittania-U is unclear. *See Stiftung v. Plains Marketing, L.P.*, 603 F.3d 295, 298 (5th Cir. 2010) (looking to whether a business entity was considered legally

---

[2] Although *S & T* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

independent or a "juridical person" under the laws of that foreign state in order to determine the entity's citizenship). We need not resolve the question of Brittania-U's citizenship because even if Brittania-U were an American business entity so that all members to the agreement were U.S. parties, Convention jurisdiction nevertheless exists. The disputed transaction and related written arbitration provisions involve property located abroad and envisage performance abroad—the leases were for sale in Nigeria and all performance was to occur in Nigeria. Furthermore, the arbitration provision provides for arbitration to occur in London, and the United Kingdom is a signatory to the Convention. *See, e.g.*, *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Intern., Inc.*, 198 F.3d 88, 93 n.5 (2d Cir. 1999). Therefore, under these circumstances, the district court properly had jurisdiction under the Convention.

Removal under the Convention was also proper. The Convention's removal provision, 9 U.S.C. § 205, allows for removal to a district court "at any time before the trial" "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." If "an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' to the plaintiff's suit. Thus, [a] district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause . . . provides a defense." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).

Here, the agreement relates to Brittania-U's suit. Like the defendant's argument in *Beiser*, Defendants' arguments are all attempts to get Brittania-U to submit to arbitration. *Beiser*, 284 F.3d at 669. Therefore, "the arbitration

agreements [here] could conceivably affect the disposition of [Brittania-U's] claims." *See id.* at 670. Accordingly, Chevron's removal was proper, and we affirm the district court's denial of Brittania-U's motion to remand. We pretermit the issue of whether removal was proper under the diversity statute because a court needs only a single jurisdictional basis to retain its power.

## B.

Brittania-U also contends that the district court erred in dismissing the case after concluding that the arbitration provision delegated "gateway issues," such as "the validity and enforcement" of the arbitration provision. We disagree with Brittania-U and affirm.

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (citations omitted). In *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199 (5th Cir. 2016), we provided an in-depth explanation of who decides what when a contract includes an arbitration provision. We reasoned that the "[e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all.*" *Id.* at 201. The second typically "involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id.* "[W]here the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability[,] . . . [a court] performs the first step . . . as it always does," but instead of moving directly to the second step, a court must first determine "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent

6

to have the arbitrator decide whether a given claim must be arbitrated." *Id.* at 201–02.

In making this analysis, "[w]e will not assume that the parties agreed to arbitrate arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'" *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (second alteration in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). If a court does conclude that the parties to an arbitration agreement clearly and unmistakably delegated arbitrability, it "must refer the claim to arbitration[;]" however, if a court concludes that the parties did not, it "must perform the ordinary arbitrability analysis." *Kubala*, 830 F.3d at 203. Accordingly, we must decide if Defendants and Brittania-U clearly and unmistakably provided for the arbitrators to decide arbitrability. *See Petrofrac*, 687 F.3d at 675.

Here, the arbitration provision's adoption of the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules clearly and unmistakably delegates arbitrability. The arbitration provision specifically states that "[t]he arbitration shall be conducted in accordance with [UNCITRAL] Arbitration Rules."

In *Petrofrac*, 687 F.3d at 675, we concluded that incorporating rules from the American Arbitration Association ("AAA") clearly and unmistakably expressed the parties' intent to leave the question of arbitrability to an arbitrator. The AAA Rules at issue in *Petrofrac* stated that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* (alteration in original). In coming to its holding, "[w]e agree[d] with most of our sister circuits." *Id.*

No. 16-20690

Three of our sister circuits have held that the language from the UNCITRAL Arbitration Rules also clearly and unmistakably delegates arbitrability. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016); *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73–74 (2d Cir. 2012). Although the UNCITRAL Rules do not delegate arbitrability as obviously as the AAA Rules in that they do not mention explicitly the arbitrator's ability to determine the scope or validity of the arbitration agreement, we nevertheless agree with the other circuits' conclusions that incorporation of the UNCITRAL Rules clearly and unmistakably delegates arbitrability by granting the arbitrators authority to decide their own jurisdiction. *See Oracle Am.*, 724 F.3d at 1073 ("By giving the arbitral tribunal the authority to decide its own jurisdiction, . . . the . . . UNCITRAL rules vest the arbitrator with the apparent authority to decide questions of arbitrability."). The district court therefore did not err in dismissing this dispute so that it may be arbitrated.

Moshiri and Attia did not sign the confidentiality agreement and its arbitration provision. But we nevertheless conclude that the delegation of arbitrability applies to them as well. Under the Federal Arbitration Act, "'background principles' of state contract law, when relevant 'allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)); *see also Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 & n.1 (5th Cir. 2016) (applying Texas law of direct benefits

estoppel).  Typically, a court would answer this question and determine these circumstances, just as it would answer what is arbitrable, because "[w]ho is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement."  *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 537 (5th Cir. 2008) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355 (5th Cir. 2003)).  But we must first determine whether claims against Moshiri and Attia were also clearly and unmistakably delegated to the arbitrator.  *See Kubala*, 830 F.3d at 201–02.

In making this determination, we find *Contec Corporation v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d Cir. 2005) instructive.  In *Contec*, Contec Corporation sued Remote Solution Co., Ltd. ("Remote Solution") to compel an indemnification dispute to arbitration.  *Id.* at 207.  Contec Corporation was a nonsignatory to the indemnification agreement containing a clause delegating arbitrability but nevertheless sought to enforce the delegation clause in its dispute with Remote Solution as a successor in interest to a signatory.  *See id.*  The Second Circuit held that the agreement's delegation of arbitrability applied to the dispute.  *Id.* at 211.  In coming to this conclusion, the court noted that the "the party seeking to avoid arbitration was a signatory to the arbitration agreement."  *Id*.  The court reasoned that this was "an important indicator of [the signatory's] expectation and intent when binding itself to the . . . [a]greement," which justified binding the signatory, Remote Solution, to the arbitration provision's delegation clause.  *See id*.

Like in *Contec*, the Defendants here—a signatory and two nonsignatories—are attempting to enforce the arbitration provision against signatory Brittania-U.  Although the confidentiality agreement does not explicitly state that it binds nonsignatories to the agreement, it does explicitly

No. 16-20690

bind Brittania-U.  Therefore, as in *Contec*, the language of the agreement clearly and unmistakably delegates arbitrability, even with regard to Brittania-U's dispute with Moshiri and Attia.

Accordingly, the district court did not err in recognizing that the confidentiality agreement's arbitration provision delegated the question of arbitrability to the arbitrators.

AFFIRMED.