# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 12-30965

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2013

Lyle W. Cayce
Clerk

TIMOTHY R. VENABLE; JULIA MARIE CLOTEAUX VENABLE,

> Plaintiffs–Appellants
> Cross Appellees,

versus

LOUISIANA WORKERS' COMPENSATION CORPORATION,

> Defendant–Appellee
> Cross Appellant.

———————

Appeals from the United States District Court
for the Eastern District of Louisiana

———————

Before SMITH, PRADO, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Timothy and Julia Venable appeal a summary judgment in favor of the Louisiana Workers' Compensation Corporation ("LWCC"), which cross-appeals the denial of its motion to dismiss for want of subject-matter jurisdiction. Because the district court lacked subject-matter jurisdiction, we reverse the

No. 12-30965

summary judgment and render a judgment of dismissal.

I.

While employed by Greene's Energy Company, LLC ("Greene's"), Timothy Venable suffered a heart attack at work in Louisiana waters aboard the Stingray drilling barge, which was owned and operated by Hillcorp Energy Company ("Hillcorp"). LWCC, Greene's insurance carrier for purposes of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), immediately began providing Venable medical and indemnity benefits pursuant to that act.

The Venables sued Hillcorp for negligence in federal court, alleging that an unreasonable delay in obtaining medical care had resulted in further harm.[1] After extensive pre-trial litigation related to the issue of indemnity, the parties participated in a settlement conference. Although LWCC was not yet a party, its representative was present.[2] Hillcorp and the Venables tentatively agreed to settle for $350,000. The Venables contend that, during the settlement conference, the representative for LWCC expressed that LWCC would consent to the proposed amount. The district court conditionally dismissed the Venables' claim based on the understanding that it had been settled.

After the settlement conference, however, LWCC refused to sign the

---

[1] The district court found that it had admiralty and maritime jurisdiction.

[2] Under the LHWCA, Venable would forfeit any future benefit from LWCC if he settled his claims against Hillcorp without receiving written approval of the settlement from LWCC on a Department of Labor-issued form, as required by statute. *See* 33 U.S.C. § 933(g)(1) (2012) ("If the person entitled to compensation . . . enters into a settlement with a third person . . . for an amount less than the compensation to which the person . . . would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation . . . . The approval shall be made on a form provided by the Secretary and shall be filed in the office of the deputy commissioner within thirty days after the settlement is entered into.").

No. 12-30965

LS-33 form that the Venables' counsel had forwarded to LWCC's attorney. At some point after the settlement conference, LWCC learned that Venable would likely need a heart transplant, meaning that LWCC would be left liable for significant future exposure even with the settlement of third-party claims.

Because LWCC refused to sign, the district court vacated the conditional dismissal. The Venables then joined LWCC as a party to enforce LWCC's purported consent to the settlement, asking the court to order LWCC to execute the LS-33 form and otherwise to approve the third-party settlement with Hillcorp. In the alternative, the Venables requested the court to find that LWCC had waived § 933(g)'s written-approval requirement by consenting to the settlement, such that no written approval was required. LWCC moved to dismiss for lack of subject-matter jurisdiction, but the court determined that the waivability of the § 933(g) written-approval requirement raised a substantial federal issue that conferred federal-question jurisdiction.

The Venables then moved for partial summary judgment. In turn, LWCC filed a cross-motion for summary judgment, contending that the written approval requirement of § 933(g) is not waivable, and even if it can be waived, the conduct of LWCC's representative did not constitute a waiver. The district court granted summary judgment for LWCC and dismissed the complaint with prejudice, holding that LWCC's decision to withhold consent on the settlement was a proper exercise of its power under the LHWCA. The Venables appeal that order, and LWCC cross-appeals the denial of its motion to dismiss for lack of jurisdiction.

II.

We review a ruling on subject-matter jurisdiction *de novo*. *See PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 540 (5th Cir. 2005) (quoting *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003)). "As

3

No. 12-30965

a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit."[3]  A district court should dismiss where "it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction."[4]  The plaintiff has the burden of establishing jurisdiction.[5]

The district court incorrectly found that it had federal-question jurisdiction under 28 U.S.C. § 1331.  Because the federal issue raised does not satisfy the well-pleaded-complaint rule, the court lacked such jurisdiction.

Section 1331 vests lower federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." An action can arise under federal law for purposes of § 1331 in two ways:  In a well-pleaded complaint (1) the party has asserted a federal cause of action, *see Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916), or (2) the party has asserted a state cause-of-action claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

First, the Venables have not asserted any federal cause of action against LWCC and instead only point to state causes of action in their amended

---

[3] *Sawyer v. Wright*, 471 F. App'x 260, 261 (5th Cir.) (per curiam), *cert. denied*, 133 S. Ct. 615 (2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009).

[4] *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009), *vacated on other grounds*, 608 F.3d 266 (5th Cir. 2010).

[5] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." (citations omitted)).

complaint.[6] The Venables cannot rely on § 933, which does not create a private cause of action.[7]

Because state law, and not federal law, creates the causes of action at issue, we turn to *Grable*, 545 U.S. at 314, under which a federal court can exercise federal-question jurisdiction over a state-law claim if (1) the state-law claim raises a substantial federal issue; (2) the parties actually dispute the federal issue; and (3) exercising jurisdiction over the particular category of cases will not disturb any "congressionally approved balance of federal and state judicial responsibilities." The district court found it had subject-matter jurisdiction because it determined that the state-law claims satisfied *Grable*.[8]

A federal court can exercise jurisdiction only where the case satisfies the well-pleaded-complaint rule, according to which, to assess whether the case arises under federal law, the court must look only to "what necessarily appears

---

[6] The amended complaint includes the following counts: (1) "LWCC should be ordered to execute the LS-33 or judgment should be entered providing that written consent to the settlement is unnecessary"; (2) "The parties to this litigation detrimentally relied on the assurances of LWCC that the amount and other terms of the settlement being negotiated would be approved by LWCC and its consent would be given"; (3) intentional misrepresentation; (4) making impossible a condition of the settlement; and (5) abuse of rights. During oral argument, the Venables' counsel indicated that he was relying on federal common law. In his view, one "could supplement or inform the district court's discretion by using analogous situations under state law." Therefore, counsel "gave [the district court] concepts in Louisiana law that would be helpful to inform [the court of its] discretion." Counsel, however, acknowledged that his pleadings had not mentioned this reliance on federal common law. Moreover, this theory of federal-question jurisdiction does not appear in the briefing, so it is waived. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

[7] *See McLaurin v. Noble Drilling (U.S.) Inc.*, 529 F.3d 285, 291–92 (5th Cir. 2008) ("Importantly, § 933 recognizes that a covered employee may have tort remedies against third parties under federal or state law. Section 933 preserves and codifies a maritime worker's common law right to pursue a negligence claim against a third party that is not the employer or a coworker; it does not create a cause of action nor establish a third party's liability for negligence." (citations omitted)).

[8] In its order, the district court noted that it was "persuaded that the proper interpretation of the settlement provision of the LHWCA presents a substantial question of federal law whose resolution is crucial to the state law claims at issue."

in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914).  Federal courts lack jurisdiction "over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983) (citations omitted).

Furthermore, although the parties may ultimately litigate a federal issue in their case, that fact does not "show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution" or the laws of the United States.  *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).

The federal issue the district court relied upon—whether a party can waive the written-consent requirement under § 933—anticipates LWCC's prospective defense.  That issue would otherwise come up in litigation in the following hypothetical situation:  First, without obtaining LWCC's written consent, the Venables entered into the settlement agreement with Hillcorp.  In response, LWCC terminated benefits.  After that, the Venables sought judicial intervention to have the benefits reinstated.  At that point, LWCC would argue that the Venables had not complied with § 933's written-consent requirements.  The Venables would then reply as they have here (and would urge, among other reasons) that LWCC had waived § 933's requirements).  In line with this hypothetical, the district court's assessment demonstrates that the Venables

6

No. 12-30965

raised this federal issue in anticipation of LWCC's defense.[9]

Furthermore, none of the Venables' claims requires proving a federal issue as an element of the claim. To the extent they have asserted valid Louisiana claims, the Venables have not shown that those state-law claims require proving a substantial federal issue. Certainly, none of them would require proving that LWCC had waived § 933's written-consent requirement.

Even assuming *arguendo* the district court was correct that the issue of waiver under § 933 raises a substantial federal issue for purposes of *Grable*, the well-pleaded-complaint rule forecloses federal-question jurisdiction. We therefore do not need to address whether the § 933 written-consent requirement poses a "substantial" federal issue.

III.

We still must examine whether the Venables have established any other basis for federal jurisdiction. As a threshold matter, they do not posit that § 933 itself vests federal-court jurisdiction over their claims. Instead, they offer a myriad of other theories to demonstrate that the district court had subject-matter jurisdiction: (1) diversity jurisdiction under 28 U.S.C. § 1332; (2) supplemental jurisdiction under 28 U.S.C. § 1367; (3) admiralty and maritime jurisdiction under 28 U.S.C. § 1333; and (4) jurisdiction under the district court's "inherent power to enforce [] settlement[s]."

As to the first theory, § 1332 requires "the matter in controversy [to] exceed[] the sum or value of $75,000, exclusive of interest and costs, and [be]

---

[9] The district court's order notes, "If a § 933(g) is enforced as written then Plaintiffs cannot prevail on their state law claims because the LHWCA will necessarily control and preempt any state law to the contrary." If § 933(g)'s written-consent requirement would necessarily preempt any contrary state law, LWCC would raise this issue as an affirmative defense.

No. 12-30965

between . . . citizens of different States . . . ."[10]  Both the Venables and LWCC, however, are citizens of Louisiana.

As to the second theory, § 1367 "grants supplemental jurisdiction over other claims that do not independently come within the jurisdiction of the district court but form part of the same Article III 'case or controversy.'" *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004).  "[I]n any civil action of which [a] district court [has] original jurisdiction, [that] court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a) (2012).[11]  A claim forms part of the same case or controversy if the "claim[ is] so related to the original claims that [it] derive[s] from a common nucleus of operative fact." *Bella v. Davis*, 531 F. App'x 457, 459 (5th Cir. 2013) (per curiam).

The claims the Venables assert against LWCC in their amended complaint do not derive from the same nucleus of operative facts as does their negligence claim against Hillcorp.  LWCC's potential waiver of § 933(g)'s written-consent requirement occasioned by its conduct during and after a settlement conference depends on facts that are completely different from those related to any torts committed by Hillcorp years before.  The district court therefore could not have exercised supplemental jurisdiction over the claims the Venables bring against LWCC.

As to the third theory, § 1333 vests exclusive federal jurisdiction involving "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in

---

[10] 28 U.S.C. § 1332 (2012); *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013).

[11] Even if the claim falls within § 1367(a), the exceptions specified in § 1367(b) and (c) may apply.  Because § 1367(a) does not apply, however, we do not need to determine whether an exception nevertheless precludes jurisdiction.

all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333 (2012). "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The locality test assesses "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* The connection test requires two showings:

> A court, first, must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (citations and internal quotation marks omitted).

The Venables' claims against LWCC do not satisfy the locality test.[12] The Venables conflate the district court's jurisdiction over their negligence claim—the basis of which appears to have occurred on navigable water—with the claims they assert against LWCC. They allege that LWCC committed various state-law torts by its conduct during or after the settlement conference. But none of that conduct occurred on navigable waters, nor were these alleged torts caused by a vessel on navigable water.[13] Therefore, the Venables cannot claim admiralty jurisdiction as the basis for subject-matter jurisdiction.

As to their fourth and final theory, the Venables assert that the district

---

[12] We therefore do not need to address whether the Venables' claims satisfy the connection test.

[13] *See Miller v. Griffin-Alexander Drilling Co.*, 873 F.2d 809, 812 (5th Cir. 1989) ("We see no reason for expanding admiralty jurisdiction to cases with such scant involvement of maritime locations.").

court could exercise jurisdiction over these claims by its "inherent power to enforce [] settlement[s]." They appear to suggest that the court could exercise its ancillary-enforcement jurisdiction as a basis for subject-matter jurisdiction.

In *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), the Court explained when a federal court can retain jurisdiction over a settlement agreement by exercising this ancillary enforcement jurisdiction. There, Guardian Life Insurance Company ("Guardian") terminated Kokkonen's general agency agreement, prompting Kokkonen to sue in state court, whereupon Guardian removed to federal court. *See id.* at 376. Before jury deliberations, "the parties arrived at an oral agreement settling all claims and counterclaims, the substance of which they recited, on the record, before the District Judge in chambers." *Id.* Although the judge was aware of the settlement, the dismissal order made no reference to the settlement agreement. *Id.* at 377. Thereafter, the parties disagreed as to Kokkonen's obligation to return certain files, and Guardian moved to enforce the agreement. *Id.*

In determining whether a federal court could exercise its inherent jurisdiction, the *Kokkonen* Court first explained that state law governs the enforcement of contracts, including settlement agreements that result in the dismissal of federal suits. *See id.* at 378. The Court therefore held that an action to enforce a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.*

Having established that federal courts require an independent jurisdictional basis to enforcement settlement agreements, the Court then described two general situations in which a federal court can exercise independent "ancillary jurisdiction": "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted). As

No. 12-30965

was the case in *Kokkonen*, the first basis does not generally apply in the instant context because the terms of a settlement agreement usually will not be "factually interdependent" with the claims underlying the original lawsuit.[14]  The Court further noted that the second basis did not apply to the circumstances we face here because (1) the district court, in its order, had not expressly retained jurisdiction over the settlement agreement, and (2) the order did not incorporate the settlement agreement.[15]

Applying *Kokkonen*, we likewise require one of those two showings for a district court to exercise ancillary jurisdiction in enforcing a settlement agreement.[16]  The Venables do not have a settlement agreement that they seek to enforce but instead want a federal court to compel LWCC to consent to their tentative agreement with Hillcorp.  Under *Kokkonen*, a district court cannot exercise ancillary jurisdiction to compel a third party's consent to a proposed, but not final, settlement agreement; none of the slew of cases cited by the

---

[14] *Kokkonen*, 511 U.S. at 380 ("[T]he facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together.").

[15] *Id.* at 381 ("The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.  In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.").

[16] *See, e.g.*, *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430–31 (5th Cir. 2002); *Woolwine Ford Lincoln Mercury v. Consol. Fin. Res., Inc.*, No. 00-60314, 245 F.3d 791 (table), 2000 WL 1910184, at *2 (5th Cir. Dec. 27, 2000) (per curiam) (unpublished).  *See generally* Andrew S. Hanen & Jeffrey M. Benton, *The Enforceability of Settlement Agreements*, 40 THE ADVOC. (TEX.) 69, 70 (2007) ("It is clear after *Kokkonen* . . . that a party wishing to preserve a district court's jurisdiction over a settlement agreement can only do so in one of two ways: (1) through an express retention of jurisdiction by the court or (2) by incorporation of the settlement agreement into the judgment.").

No. 12-30965

Venables suggests as much.[17]  Therefore, they have not demonstrated that the district court could exercise ancillary jurisdiction.

Because the district court lacked subject-matter jurisdiction over the state claims the Venables brought against LWCC, we need not decide whether the court correctly determined that LWCC's decision to withhold consent on the settlement was a proper exercise of its power under the LHWCA.  The summary judgment is REVERSED, and a judgment of dismissal for want of jurisdiction is RENDERED.

---

[17] The Venables principally rely on *Bell v. Schexnayder*, 36 F.3d 447 (5th Cir. 1994), decided shortly after *Kokkonen*.  In *Bell*, however, the parties had entered into a settlement agreement, and the district court's order expressly retained jurisdiction over the settlement agreement.  *See id.* at 449 ("On October 14, the court signed a sixty day order of dismissal. The order states that the court, 'having been advised by counsel for the parties that the above action has been settled,' was dismissing the case 'without prejudice to the right, upon good cause shown within sixty (60) days, to reopen it if settlement is not consummated and seek summary judgment enforcing the compromise.'").  *Bell* does not apply where the parties have not entered into a settlement agreement.