# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 17-20685

————

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2019

Lyle W. Cayce
Clerk

ADAM JOSEPH RESOURCES (M) SDN. BHD.,

Plaintiff - Appellant

BROWN SIMS,

Movant - Appellant

v.

CNA METALS LIMITED,

Defendant - Appellee

————

Appeal from the United States District Court
for the Southern District of Texas

————

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Brown Sims, a Houston law firm, was allegedly cheated out of its attorney's fee by its client, Adam Joseph Resources (AJR) acting through collusion with the opposing party, CNA Metals and its attorneys. Brown Sims had successfully represented AJR—on a contingency fee basis—throughout a two year arbitration proceeding under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), which Congress

No. 17-20685

has implemented at 9 U.S.C. § 201, *et seq.*[1]  After Brown Sims obtained a favorable result for AJR, its wayward client got in bed with CNA and its attorneys to consummate a settlement just between themselves.  These machinations made each of the adversaries better off by cutting out Brown Sims's contingent fee interest.  Of course, neither Brown Sims nor the district court was aware of the agreement.  Upon being advised of the settlement executed between the parties, the district court, in a well-considered opinion, dismissed the case as moot, further finding it was without subject matter jurisdiction over Brown Sims's attempts to intervene and protect its interest.  Because we hold that it now appears that the district court possessed jurisdiction under the Convention, we reverse the dismissal of the case and remand for the district court to grant Brown Sims's renewed motion to intervene and consider Brown Sims's claims on the merits.

I.

AJR, a Malaysian business, brought a complaint in the Southern District of Texas against CNA Metals, a Texas corporation, invoking federal diversity jurisdiction and alleging several breach of contract claims governed by Texas law.  CNA answered that AJR's claims were within the scope of an arbitration agreement and moved the district court to compel arbitration pursuant to the Convention.  The district court granted the motion to compel, referred the matter to arbitration, and stayed the proceedings pending the outcome of arbitration.

---

[1] The Senate ratified the Convention in 1970 to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Congress implemented the Convention as Chapter 2 of the Federal Arbitration Act. *See* 9 U.S.C. § 201, *et seq.*

No. 17-20685

The arbitration went on for two years and was conducted by the American Arbitration Association, which applied Texas law to the dispute. AJR prevailed in the arbitration and was awarded $503,943.56. The arbitrator certified that the final award was made pursuant to the Convention.

Throughout this two-year arbitration, AJR was represented by James Koecher of the Houston law firm, Brown Sims, P.C. Brown Sims and AJR entered into a retention agreement, governed by Texas law, in which AJR assigned Brown Sims a 37% interest in any recovery against CNA. CNA was represented by Ronald Cohen of the Houston firm Cohen & Small, P.C.

On the day the arbitral award was issued, Cohen died unexpectedly, a death unbeknownst to Brown Sims or the district court. After Cohen's death, CNA hired Mahendru, P.C., a Houston firm that had handled other arbitrations between CNA and AJR, to take over for Cohen & Small. Mahendru contacted the arbitration case manager to request reconsideration of the award. The case manager refused because the arbitration had concluded and the award was final.

At this point, Brown Sims moved the district court to lift the stay and enter a final judgment confirming the arbitral award. Meanwhile, without the involvement, or even knowledge, of Brown Sims, AJR and CNA began negotiating a settlement that would benefit both parties by cutting out Brown Sims and its fee. AJR and CNA agreed to settle the outstanding $503,943.56 arbitral award for $395,000. In the absence of Brown Sims's interest, AJR obtained a larger recovery ($395,000 as opposed to $317,500) and CNA reduced its liability by approximately $109,000.[2] CNA's counsel, Mahendru worked

---

[2] In the words of the district court: "Thus, compared to the Arbitral Award confirmed by this Court's Final Judgment of December 13th, the settlement reduced Defendant's liability to Plaintiff by approximately $109,000 and by cheating its attorneys out of their attorneys' fees, Plaintiff netted an additional $77,500 for itself."

with AJR's Malaysian counsel to negotiate, draft, and execute the settlement. On December 8, 2016, CNA fully performed its obligation under the settlement agreement by wiring $395,000 to AJR's Malaysian counsel's bank account. Neither Mahendru nor AJR informed Brown Sims or the district court of this settlement.

Still unaware of Cohen's death or the December 8 settlement, the district court continued with the confirmation proceedings. Both Brown Sims and Mahendru knew of Cohen's death but failed to inform the district court. On December 13, in the absence of an answer or response in opposition to AJR's motion to confirm the arbitral award, the district court entered final judgment for AJR in the amount of $503,943.56. Brown Sims emailed the final judgment to CNA and demanded its client be paid.

CNA then moved the district court under Rule 60(b)(5) to set aside the final judgment because the settlement between CNA and AJR released the previously entered judgment. Brown Sims, "represent[ing] its own interest in the final arbitral award and Final Judgment, an interest that had always been litigated in the name of AJR" filed a Rule 60(b)(6) motion for relief from judgment. In this motion, Brown Sims asked the district court to reform the final judgment confirming the arbitral award to reflect that CNA was liable to AJR for $315,776.54 and to Brown Sims directly for its assigned interest in the award, $188,167.02 (reflecting costs). Brown Sims also moved to intervene under Rule 24. Shortly after, Brown Sims withdrew its Rule 24 motion out of fear of destroying the court's diversity jurisdiction, but nevertheless continued to pursue its interest in the final judgment in the name of AJR. Thus, as relevant to this appeal, pending before the district court was CNA's Rule

4

No. 17-20685

60(b)(5) motion to set aside the final judgment and Brown Sims's Rule 60(b)(6) motion for relief from judgment.[3]

The district court first denied AJR/Brown Sims's Rule 60(b)(6) motion for lack of subject matter jurisdiction, then granted CNA's Rule 60(b)(5) motion to set aside the final judgment as satisfied by the settlement agreement, proceeded to vacate its earlier final judgment confirming the arbitral award, and dismissed the entire action without prejudice as moot.  The district court construed AJR/Brown Sims's Rule 60(b)(6) motion as an attempt to intervene and assert a new claim in Brown Sims's name against CNA because Brown Sims was "inherently conflicted with its client."  It held that it could not exercise supplemental jurisdiction over Brown Sims's claim because original jurisdiction was founded solely upon diversity and allowing Brown Sims to intervene would shatter diversity.  The court further held that this case did not present a "typical attorney-client fee dispute" because Brown Sims sought to "effectively adjudge Brown Sims's claim not only against its client but also against the non-diverse Defendant"; and the court did not have supplemental jurisdiction to do so because jurisdiction over Brown Sims's claim was founded solely upon diversity, which was lacking between Brown Sims and CNA.

Finally, the district court found that its lack of subject matter jurisdiction over Brown Sims's claim coupled with the settlement agreement between AJR and CNA meant there was no active case or controversy, rendering the case moot.  Although it acknowledged that Brown Sims may have a viable claim to recover its interest because it was "cheat[ed]" out of its attorney's fees, the district court held that it was compelled to dismiss Brown

---

[3] As noted above, AJR's complaint initially only raised diversity as a basis for federal jurisdiction; the Convention was only asserted later in CNA's response to the complaint.  As we shall see, the Convention itself is sufficient to confer federal question jurisdiction over Brown Sims's claims in intervention, despite the case's initial basis in diversity.

No. 17-20685

Sims's claims for lack of jurisdiction and vacate its final judgment confirming the arbitral award.

After the court vacated its final judgment, Brown Sims filed a renewed Rule 24 motion to intervene and a Rule 59(e) motion to alter or amend the judgment both asserting that, aside from diversity jurisdiction, the district court had subject matter jurisdiction under the Convention. In its complaint in intervention against CNA, Brown Sims requested the district court hold CNA liable for its contingency fee interest in the award and the costs arising from CNA and its attorneys' actions. Although the district court again acknowledged that it "cannot help but feel contempt" for AJR who "betrayed its attorneys by settling the case behind their back to cheat them out of legal fees that they had earned," it denied the motions for lack of subject matter jurisdiction over Brown Sims's claim against CNA. Brown Sims now appeals: (1) the district court's denial (for lack of jurisdiction) of its Rule 60(b)(6) motion for relief from the final judgment; (2) the district court's grant of CNA's Rule 60(b)(5) motion to set aside the final judgment; and (3) the district court's denial of Brown Sims's renewed Rule 24 motion to intervene.

II.

On appeal, Brown Sims argues that the district court erred in finding that it was without subject matter jurisdiction to consider its claim against CNA. Brown Sims points to three potential sources of subject matter jurisdiction: (1) jurisdiction arising directly under the Convention, (2) jurisdiction arising from the supplemental jurisdiction statute, and (3) jurisdiction ancillary to the court's diversity jurisdiction. Brown Sims further argues that the district court erred in denying its Rule 24 motion to intervene of right. Finally, Brown Sims argues that not only should this court hold that the case is not moot, but that this court should also render judgment for it

6

No. 17-20685

against CNA in the amount of $188,167.02, which represents its interest in the final arbitral award plus the costs of this appeal.

CNA responds that the district court was right in all respects. First, there is no federal subject matter jurisdiction because the parties are not diverse and the claim does not arise under federal law. Second, the court correctly denied Brown Sims's motion to intervene because it did not possess subject matter jurisdiction over the claim that Brown Sims attempted to assert in intervention. Finally, the district court correctly concluded that the case was moot because the parties properly before the court no longer had a case or controversy, or, in the alternative, this court should not directly render judgment for Brown Sims but instead remand to the district court to determine whether the settlement was a proper satisfaction of the judgment thereby mooting the case and entitling CNA to Rule 60(b)(5) relief. We first turn to consider the court's holding that it did not possess subject matter jurisdiction to consider Brown Sims's claim against CNA.[4]

### III.

### A.

"We review a ruling on subject-matter jurisdiction *de novo*." *Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013).[5] Neither party disputes that the arbitration agreement itself falls under the Convention. The question is whether the ancillary claim of Brown Sims

---

[4] We address jurisdiction before considering Brown Sims's right to intervene because jurisdiction is an absolute prerequisite to Brown Sims's success, whereas intervention is one potential route for Brown Sims to resolve its claim.

[5] We reject CNA's argument that Brown Sims has waived arguing the Convention as a ground for jurisdiction. Brown Sims raised the issue below in its Rule 59(e) motion which the district court considered on the merits. *Cf. Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 338 n.5 (5th Cir. 2004) (considering jurisdictional argument premised on the Convention that was raised for the first time in a 28(j) letter prior to oral argument).

against CNA also falls under the jurisdiction of the Convention or if it must depend upon some other source of jurisdiction.[6]

We recently addressed the scope of federal jurisdiction under the Convention in *Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*. There we held that "[f]or a federal court to have jurisdiction under the Convention two requirements must be met: (1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement." *Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 895 F.3d 375, 378 (5th Cir. 2018) (in abeyance pending Louisiana Supreme Court resolution of unrelated state law question).[7] The court looks to § 205—the provision relating to removal of the arbitration from state to federal court—for guidance in interpreting original jurisdiction under § 203. *See id.* at 379. Section 205 provides for removal to federal court when "[t]he subject matter of an action or proceeding . . . relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. Interpreting § 205, we have earlier noted that "the phrase 'relates to' generally conveys a sense of breadth" and is

---

[6] The district court is correct that this case was brought initially under diversity jurisdiction. Only after CNA raised the Convention, in its responsive pleading, did the new ground of federal jurisdiction appear. The district court was correct to observe that diversity jurisdiction was not applicable to Brown Sims because its entry into the case eliminated diversity of citizenship. In any event, so far as Brown Sims's claim is concerned, federal jurisdiction rests on the Convention, not diversity. As will be shown below, that this subsequent ground for federal jurisdiction did not appear in the complaint is of no consequence given that the Convention abrogates the well-pleaded complaint rule. *See* 9 U.S.C. § 205 ("The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.").

[7] 9 U.S.C. § 203 provides that:

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

a "low bar" to federal jurisdiction. *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). In *Beiser*, the court interpreted § 205's "relates to" to mean "having a possible effect on the outcome of an issue or decision" and held that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Id.* Further, if the "subject matter of the litigation has some connection, has some relation, has some reference to the arbitration clauses," it "relates to" the arbitration for purposes of the Convention. *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 378–79 (5th Cir. 2006).

In *Stemcor*, we held that "an attachment to facilitate" an arbitration and "increase [the plaintiff's] chance of recovering on any award" "relates to" the covered arbitration. *Stemcor*, 895 F.3d at 380–81. We rejected the notion that courts should "read jurisdiction under the Convention restrictively," and further endorsed the federal trend toward "recogniz[ing] jurisdiction under the Convention to issue state-law preliminary remedies in aid of arbitration." *Id.* at 380, 380 n.2.

Without the benefit of *Stemcor*'s guidance,[8] the district court analyzed Brown Sims's claim as it would any other similar claims asserting federal question jurisdiction—under the well-pleaded complaint rule, looking only to the ground of jurisdiction asserted in the initial complaint—and determined that jurisdiction was based solely upon diversity. For this reason, it did not consider jurisdiction directly under the Convention. *Stemcor*, however, now makes clear that there is another path to jurisdiction. *Stemcor* carries forward the point that the Supreme Court has previously noted—that the Convention

---

[8] The district court's final word in this case was its denial of Brown Sims's renewed motion to intervene on October 23, 2017, long before *Stemcor*'s clarification of the scope of jurisdiction under the Convention was published in the summer of 2018.

confers broader federal jurisdiction than even Chapter 1 of the Federal Arbitration Act. *See Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009) ("FAA § 205 goes further and overrides the well-pleaded complaint rule pro tanto."); *Acosta*, 452 F.3d at 377 ("Congress granted the federal courts jurisdiction over Convention cases and added one of the broadest removal provisions, § 205, in the statute books.").

An attorney's attempt to assert a claim against a defendant to obtain his interest in a final arbitral award or to reform a final judgment confirming a final arbitral award to reflect his contingent fee interest in the award certainly "relates to" the arbitration agreement and award. *Cf. Stemcor*, 895 F.3d at 381 (noting that because a party sought a remedy "to bring about a covered arbitration," the suit related to the arbitration). Here, Brown Sims's claim seeks to bring about the allocation of a covered arbitral award. Not only does Brown Sims's claim have the potential to affect the arbitral award, it goes to the very heart of the arbitration proceeding—whether the award is confirmed or set aside as settled, how the award is dispersed, and the relative liabilities of the parties.

There may well be ancillary issues arising in other cases that do not "relate to" the arbitral proceeding. Brown Sims's claim is not such a case. Its claimed interest in the arbitral award for services rendered in obtaining the award plainly "relates to" the award.[9]    *Cf. Acosta*, 452 F.3d at 377 ("It is

---

[9] The district court's reliance on *Venable* misses the mark. That case, analyzed under the more demanding standard for traditional federal question claims, involved two separate claims—one for breach of contract and one for tortious conduct at a settlement conference. *See Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). Brown Sims's claim is not for damages resulting from the collusive settlement itself but to reform the judgment to reflect its interest in the arbitral award. Unlike *Venable*, the focus of this litigation, the arbitral award, has never varied. All that has changed is the distribution of the award itself. Brown Sims does not seek one penny from CNA over and above its interest in the award itself and the costs of this appeal.

No. 17-20685

unarguable that the subject matter of the litigation has some connection, has some relation, has some reference to the arbitration clauses here."). To the point, Brown Sims's claim may or may not fail on the merits, but *Stemcor* demonstrates that the Convention confers jurisdiction for addressing and resolving Brown Sims's claim.

B.

With jurisdiction now decided, we move on to fully consider Brown Sims's motion to intervene of right. We review the denial of a motion to intervene of right de novo. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (citing 6 James W. Moore et al., *Moore's Federal Practice* § 24.03[1][a] (3d ed. 2008)). This decision is a practical undertaking, considering the particular facts and circumstances of the case. *See id.*

As an initial matter, we must consider whether a live case and controversy existed when Brown Sims attempted to intervene. *See Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit or action by which a third person is permitted to make himself a party, either joining the plaintiff in claiming what is sought by the complaint, or uniting with the defendant in resisting the claims of the plaintiff, or demanding something adversely to both of them."). Although generally disfavored, courts often consider post-settlement motions to intervene of right. *See, e.g.*, *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) ("[A]n attempt to intervene after final judgment [approving a settlement] is ordinarily looked upon with a jaundiced eye. The rationale which seems to underlie this general principle, however, is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere

with the orderly processes of the court. In the present case neither of these results would have ensued if the intervention had been allowed."); *Skinner v. Weslaco Indep. Sch. Dist.*, No. 99-40541, 2000 WL 959531 (5th Cir. June 7, 2000) (discharged attorney could intervene to assert contingent fee interest after the named parties settled). The proper inquiry into post-settlement intervention is one of timeliness under Rule 24 rather than mootness when a real party in interest is attempting to insert itself into the still pending case post-settlement and the district court has subject matter jurisdiction to adjudicate the claim in intervention. *See, e.g., United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393 n.14 (1977) (motion to intervene filed three weeks after a settlement agreement, that was incorporated into the district court's final judgment, should be granted);[10] *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003) (holding that a dispute stemming from an international arbitration under the Convention was not mooted by an Indonesian court's annulment of the arbitral award because "as long as there is some interest in the outcome for which effective relief is available, the case is not moot"). Because the district court had subject matter jurisdiction to hear Brown Sims's claim, the settlement between AJR and CNA did not moot the case. Therefore, we will examine Brown Sims's Rule 24 motion.[11]

To be entitled to intervene as of right, Brown Sims must demonstrate that (1) it timely applied; (2) it has an interest relating to the property or

---

[10] Additionally, during oral argument, counsel for CNA conceded that the case was not formally moot at the time Brown Sims filed its Rule 60(b)(6) motion.

[11] The district court did not consider the merits of Brown Sims's Rule 24 motion because it found that it was without jurisdiction over any claim asserted by Brown Sims. Remand is unnecessary because the facts relevant to intervention are not in dispute and as discussed below, all Rule 24 factors weigh decisively in favor of granting Brown Sims's motion.

transaction that is the subject of the case; (3) disposition of the case may practically impair or impede its ability to protect its interest; and (4) it is inadequately represented by the existing parties. Fed. R. Civ. P. 24(a); *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994).

Turning first to timeliness, we examine four factors: (1) the length of time during which the intervenor actually knew or reasonably should have known of his interest in the case; (2) the extent of prejudice to the existing parties to the litigation; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by failure to apply sooner . . . . Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Sierra Club*, 18 F.3d at 1205 (quoting *E.J. Lavino Co.*, 430 F.2d at 1074). Here, all four timeliness factors weigh in favor of allowing intervention. First, Brown Sims attempted to intervene as soon as it learned that its interest may be in peril. To be sure, Brown Sims withdrew its initial motion to intervene based on the same flawed jurisdictional assumption made by the district court.[12] Nevertheless, it eventually renewed its motion to intervene when it was absolutely clear that it could not vindicate its interest without intervention. *See id.* at 1206 ("A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties."). With the benefit of hindsight, perhaps it would have been more ideal to maintain the initial intervention motion, but we cannot say that Brown Sims's attempt to

---

[12] Furthermore, the district court construed Brown Sims's Rule 60(b)(6) motion, which was indisputably timely, as a motion to intervene.

navigate its quandary was unreasonable: intervene and risk destroying diversity or abstain from intervening and risk mootness.

Second, any prejudice created to the arbitrating parties is of their own making; or should it be said that equity is not on their side. CNA and AJR will suffer prejudice by allowing Brown Sims to intervene to protect its interest that is, the prejudice of possibly dismantling their scheme, "[b]ut prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Id.*

The third factor—the extent of prejudice to the would-be intervenor if its petition were denied—weighs heavily in favor of allowing intervention by Brown Sims. The disposition of this matter without Brown Sims would greatly impede its ability to protect its interest for a number of practical reasons, including: (1) requiring Brown Sims to institute a new proceeding in a court unfamiliar with the dispute and uncertain to obtain personal jurisdiction over both CNA and AJR; (2) a potential statute of limitations defense; (3) forcing Brown Sims to incur substantial expenses associated with a separate lawsuit; and (4) if the district court's Rule 60(b)(5) ruling stands, CNA may raise a res judicata defense to a subsequent attempt to collect fees by Brown Sims.[13] This factor also favors Brown Sims.

The final timeliness factor—unusual circumstances—certainly falls toward Brown Sims. In *Stallworth,* this court found that since one of the existing parties made it more difficult for the potential intervenors to acquire information that would alert them to the need to intervene, the existing party "should not be heard to complain that the appellants should have known about

---

[13] Further complicating Brown Sims's attempt to gain redress in state court against its wayward client is the fact that it is not clear from the record if AJR is even still in existence.

it or appreciated its significance sooner." *Stallworth*, 558 F.2d at 267. Here, CNA and AJR settled the case surreptitiously to decrease their liability by cutting Brown Sims out of its contingent fee. Now CNA argues that Brown Sims cannot intervene to protect its interest because it did not intervene before the settlement, even though Brown Sims was purposefully kept in the dark. These unusual circumstances are exclusively in Brown Sims's favor. Thus we hold that all four factors support a conclusion that Brown Sims's motion to intervene was timely. We next advance to Rule 24's requirements imposed on Brown Sims to establish its substantive right to intervene.

After establishing timeliness, Brown Sims must meet three further requirements to intervene as of right. First, Brown Sims must "have an interest relating to the property or transaction that is the subject of the action." *Sierra Club*, 18 F.3d at 1204–05. Second, Brown Sims must show that the disposition of the case will practically impair or impede its ability to protect its interest. *See id.* Third, Brown Sims must show that its interest is inadequately represented by the existing parties. *See id.*

Our consideration of these requirements is controlled by *Gaines v. Dixie Carriers, Inc.*, in which we held that a law firm that had been discharged by its client must be allowed to intervene as of right in a suit to protect its contingent fee interest in any recovery by its former client. 434 F.2d 52 (5th Cir. 1970). In that case Mr. Gaines signed a contingent fee contract with a law firm and, after the firm "allegedly spent considerable time working on" his claim, proceeded to discharge the firm without cause. *Id.* at 53. While the litigation was pending, the firm filed a motion to intervene in the underlying action to protect its contingent fee interest in any potential recovery. The court held that "the appellant law firm here claimed an interest in the action . . . and is so situated that the final disposition of the action may as a practical matter

impair or impede its ability to protect that interest. Neither of the existing parties is concerned with protecting the appellant's interest." *Id.* at 54.

From *Gaines* forward, this circuit has consistently held that an attorney's contingent fee is a sufficient "interest relating to the property or transaction that is the subject of the action" for purposes of intervention. *See, e.g., Valley Ranch Dev. Co. v. F.D.I.C.*, 960 F.2d 550, 556 (5th Cir. 1992) ("[A] discharged lawyer with a contingent fee agreement does have an 'interest' for purposes of intervention."); *Keith v. St. George Packing Co.*, 806 F.2d 525 (5th Cir. 1986) (attorney entitled to intervene as of right to protect contingent fee interest); *Skinner*, 220 F.3d at 584 (applying *Gaines* to find that a discharged lawyer who has a contingency fee interest "clearly possesses an interest in the subject of the underlying action" for purposes of Rule 24); *see also Gilbert v. Johnson*, 601 F.2d 761, 767 (5th Cir. 1979), *cert. denied*, 445 U.S. 961 (1980) ("It therefore appears that this [attorney's lien] was an interest in this litigation for which protection from the court can properly be sought by allowing the party to intervene in the pending action.").[14]

Moving on to the second requirement, we are easily persuaded that the disposition of this matter would impair or impede Brown Sims's ability to protect its interest.[15]   *See Gaines*, 434 F.2d at 54 ("[A]ppellant law firm here

---

[14] Although *Gaines*'s recognition of a sufficient Rule 24 interest in a contingent fee has been criticized in this circuit and other circuits have declined to adopt its rationale, its holding is directly controlling in this case. *See, e.g., Keith*, 806 F.2d at 526 ("Although *Gaines* may not represent the most persuasive use of Fed. R. Civ. P. 24, it binds us as the law of this Circuit until modified en banc."); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178 (2d Cir. 2001) (declining to adopt *Gaines* and *Gilbert*).

[15] Brown Sims points to numerous practical consequences arising from the circumstances of this case that would prevent it from vindicating its interest: (1) requiring Brown Sims to institute a new proceeding in a court unfamiliar with the dispute and uncertain to obtain personal jurisdiction over both CNA and AJR; (2) a potential statute of limitations defense; (3) forcing Brown Sims to incur substantial expenses associated with a separate lawsuit; (4) if the district court's Rule 60(b)(5) ruling stands, CNA may successfully

. . . is so situated that the final disposition of the action may as a practical matter impair or impede its ability to protect that interest."); *see also Valley Ranch Dev. Co.*, 960 F.2d at 556 (attorney's interest in contingent fee is impaired if attorney "can show actual collusion between his clients and other parties or an actual attempt to deny him his fees"). CNA argues that, in spite of the potential difficulties in initiating another suit, Brown Sims's interest is not impaired because it is not formally foreclosed from bringing another suit. This argument runs counter to the text of Rule 24 and our precedent, which focuses on practical consequence. *See Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992) ("[T]he inquiry under [Rule 24] (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application; that intervention of right must be measured by a practical rather than technical yardstick." (internal quotation marks omitted)); *see also Brumfield*, 749 F.3d at 344 ("The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule.").[16]

Indeed, we have explicitly interpreted *Gaines* to dismiss the argument that an attorney's ability to institute a future proceeding to recover fees negates intervention as of right: "Aside from its unique factual setting, the distinguishing feature in *Gaines* is the fact that the discharged firm would have had to initiate a subsequent action to collect the fees allegedly generated in the existing litigation." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 415–16 (5th Cir. 1991); *see also Skinner*, 220 F.3d at 584 ("[The

argue that Brown Sims's interest was released; and (5) the potential insolvency of Brown Sims's former client.

[16] We do not hold that under *Stemcor*, Rule 24 is the only path to resolve issues surrounding a covered arbitral award in federal court—such other possible avenues we leave for another day.

intervening attorney] will likely suffer prejudice if the district court does not permit him to intervene.  If [the intervening attorney] cannot intervene in the instant suit, he will be forced to institute a separate action.  This court has previously found prejudice under almost identical circumstances.").  Therefore, CNA's argument that Brown Sims will have to institute subsequent litigation to protect its interest is a decisive argument in favor of finding Brown Sims's interest to be impaired.

Third, it is clear that the existing parties to the lawsuit will not adequately represent Brown Sims's interest in its contingent fee.  *Cf. Gaines*, 434 F.2d at 54 ("Neither of the existing parties is concerned with protecting the appellant [law firm's] interest.").  CNA's argument attempts to distinguish *Gaines*, in which intervention was sought before a settlement was reached, on the grounds that here "Brown Sims only sought to intervene 'as of right' **after** CNA had already paid the settlement funds to AJR."  Some cheek!  CNA settled the case, hid the settlement from Brown Sims, and now CNA argues that Brown Sims cannot intervene to assert a claim to its fee because it did not intervene before the unknown and collusive settlement agreement was consummated.  A little too much for us to accept.

Therefore, on the record before us and the undisputed facts, it is unmistakable that Brown Sims has met all of Rule 24's criterion for intervention as of right.  The district court need not concern itself further with this issue and, on remand, should grant Brown Sims's Rule 24 motion.

No. 17-20685

C.

Finally, we consider the district court's disposition of the Rule 60(b) motions.[17] To refresh the reader: we review "a district court's *interpretation* of a federal rule of civil procedure . . . de novo" but "a district court's *application* of the Rule only for abuse of discretion." *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385 (5th Cir. 2012). A court "abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hall v. Louisiana*, 884 F.3d 546, 549 (5th Cir. 2018). As set out above, the same error of law—finding a lack of subject matter jurisdiction—underlying the district court's denial of Brown Sims's motion to intervene also motivated the denial of Brown Sims's Rule 60(b)(6) motion (seeking to protect its contingent fee interest in the arbitral award) and the grant of CNA's Rule 60(b)(5) motion (seeking to set aside the arbitral award as settled). Contrary to Brown Sims's assertion, however, it would not be proper for this court to render a judgment in its favor. The proceedings below focused almost exclusively on jurisdiction and the district court has not had an opportunity to fully examine the factual issues of this dispute and, if appropriate, fashion a practical remedy. The district court must yet consider whether Brown Sims had a viable and legal interest in the award and, if so, whether CNA is liable to Brown Sims for its claimed interest in the award. Therefore, we vacate the district court's grant of Brown Sims's Rule 60(b)(6) motion and denial of CNA's Rule 60(b)(5) motion and remand for consideration on the merits.

---

[17] CNA's waiver arguments are meritless. Brown Sims specifically and extensively opposed the Rule 60(b)(5) ruling in its Rule 59(e) motion to alter or amend judgment below and does so again on appeal.

No. 17-20685

IV.

To sum up: we have held, first, that the district court, under the Convention, possessed subject matter jurisdiction over Brown Sims's claims against CNA.  Second, we have further held that because the court had jurisdiction, and Brown Sims established its right to intervene, it erred in denying Brown Sims's Rule 24 motion.  Finally, we have held that for the same reason that it erred in denying Brown Sims's Rule 24 motion, the district court erred in denying Brown Sims's 60(b)(6) motion and further erred in granting CNA's Rule 60(b)(5) motion, dismissing the case.

Accordingly, we REVERSE the district court's order denying Brown Sims's Rule 24 motion to intervene as of right and VACATE the district court's judgment denying Brown Sims's Rule 60(b)(6) motion and granting CNA's Rule 60(b)(5) motion.  We therefore REMAND to the district court to consider Brown Sims's claims on the merits in a manner not inconsistent with this opinion.

REVERSED, VACATED, and REMANDED.